# EXHIBIT "B"

# CONTINGENT WORKFORCE SUPPLY AGREEMENT

This Contingent Workforce Supply Agreement is entered as of February 4, 2013 between **Del Monte Fresh Produce N.A., Inc.**, a Florida corporation, whose principal address is 241 Sevilla Avenue, Penthouse, Coral Gables, Florida 33134 ("Del Monte"), and **Diamond Staffing Services Inc. and its subsidiaries, d/b/a Tri-State Staffing, Corporate Resource Services, Inc.**, a New York corporation, with offices located at 160 Broadway, 11th Floor, New York, NY 10038 ("Service Provider").

WHEREAS, the Del Monte is engaged in the business of the packing, marketing, and sale of fresh vegetables and fresh cut produce (the "Business");

WHEREAS, the Service Provider is engaged in the business of providing and supervising qualified and competent contingent workers ("Production Workers") and production supervisors ("Supervisors" and/or "Supervisors") to companies such as the Del Monte who are engaged in the Business;

WHEREAS, the Del Monte has agreed to retain the Service Provider, on a non-exclusive basis, to provide, from time to time, Production Workers, Supervisors, and the other services described below at its **Atlanta, GA** location;

WHEREAS, the parties agree that any prior agreements, whether written or oral, regarding any services provided by Service Provider to Del Monte at the above-mentioned location are hereby terminated, and this Agreement shall govern the parties relationship with respect to the Services provided herein at such location going forward.

IN CONSIDERATION of the mutual covenants and promises set forth below, and other good and valuable consideration, the Service Provider and Del Monte have agreed as follows:

I. **Term.** The term of this Agreement shall commence on February 4, 2013 (the "Commencement Date"), and shall continue in full force and effect for three (3) years from the Commencement Date, unless terminated by Del Monte in accordance with Section VIII of this Agreement. This Agreement may be renewed for successive one-year periods upon the mutual written agreement of the parties hereto.

II. **Relationship of Parties**

   a. **Sole Employer:** The Service Provider is and shall be the sole employer of all Production Workers and Supervisors, and with respect to such personnel, Service Provider shall perform all of the duties and responsibilities of that role under the provisions of all applicable federal and state laws and regulations.

   b. **Independent Contractor:** Nothing contained in this Agreement shall be interpreted or construed to mean that the parties are a joint venture, partnership, co-owners, and agents of one another or otherwise participants in a joint or common undertaking. Service Provider acknowledges and agrees that (i) the Services shall be provided solely as an independent contractor and not as an agent, employee, or subcontractor of Del Monte; and (ii) it has no right, power or authority, express or implied, to assume or create any obligations, responsibility or liability on behalf of Del Monte, directly or indirectly, or to bind Del Monte in any manner whatsoever. Any and all contracts, agreements or business relationships entered into by Service Provider shall be for Service Provider's sole account and shall not bind Del Monte in any respect. Del Monte shall not be responsible for paying any of Service Provider's expenses or costs for conducting its business, including, but not limited to, wages, benefits, incentives, claims of any nature, taxes, or any other expenses and costs incurred by Service Provider.

III. **Services.**

   a. **Work Force Requirements & Scheduling.** For each week during the term of this Agreement, the Service Provider shall give best efforts to provide Del Monte with the number of

Confidential

Production Workers as requested by Del Monte. Service Provider shall provide Del Monte with number of Production Workers confirmed for each week. Del Monte shall endeavor to provide reasonable advance notice of any increase of more than twenty five (25) Production Workers in any week period.

b. **Authority, Supervision, and Qualifications.** The Service Provider agrees to provide, and hereby warrants and represents to Del Monte that all Production Workers that it provides:

a. are qualified, competent and capable of (a) selecting and sorting produce by type and quality in accordance with Del Monte's instructions, standards and specifications as communicated to Service Provider by Del Monte from time to time (either verbally or in writing); (b) slicing, dicing, handling, washing, packing, repacking or otherwise manipulating produce to comply with Del Monte's customer orders; (c) operating coring machines and other equipment used in the Business; (d) loading, organizing and arranging the packages of produce and/or fresh-cut produce; and (e) such other activities and duties performed in the operation of the Business in accordance with Del Monte's instructions, standards and specifications.

b. have received the proper safety and security training as set forth in the attached Exhibit B, incorporated herein by reference;

c. are, and shall at all times, be eligible to seek and accept employment in the United States under all applicable federal, state and local laws, rules and regulations and have the appropriate legal status to work (e.g., complete I-9 process);

d. are, and shall at all times be, employees of the Service Provider and be under the sole and direct supervision and control of the Service Provider and its Supervisor, as defined herein, or Supervisors, as the case may be as a result of number of Production Workers providing services in the Facility;

e. are provided written notice that they are employees of the Service Provider, not of Del Monte. Such written notice shall instruct each Production Worker that all issues relating to payroll, employee benefits, or other employee matters shall be directed to the Service Provider's On-Site Administrator/Human Resources Officer (the "On-Site Administrator"). At all times during the term of this Agreement, the Service Provider shall have its On-Site Administrator at the facility to manage the administrative tasks set out herein. The On-Site Administrator shall be present during normal business hours at the facility and shall remain on call at all times in the event of emergencies or other extenuating circumstances. At no time shall a Production Worker contact or communicate any such issues directly to Del Monte;

f. shall be compensated by the Service Provider who shall be solely responsible for all salaries, benefits, incentives, payroll taxes, withholding taxes, workers compensation, health insurance or any other compensation or benefits and that the Production Workers shall not be entitled to participate in any employee benefit plan or practice that is provided to Del Monte employees;

g. shall observe standards of good and professional workmanlike conduct and keep their work areas in a neat and clean condition and as may be required by applicable federal, state and local laws, rules and regulations;

h. have agreed to comply with Del Monte's rules and policies regarding security, general safety (e.g., GMP, SPO SSOP, SQF training, etc), confidentiality, premises access, computer usage, and food safety requirements; and

i. have passed screening requirements as Service Provider deems reasonably necessary to determine the qualifications and suitability of the Production Workers prior to their assignment

(collectively, the "Services").

c. **Inspection & Limited Oversight**. The Service Provider agrees that Del Monte shall have the right to have an inspector (the "Del Monte Representative") present at all times to observe all of the Services and to ensure that the Del Monte's requirements are met. At a minimum, Service Provider shall provide at least one full-time Supervisor for its Production Workers to comply with applicable laws and regulations, as well as to direct and manage the Production Workers' activities. The Supervisor's duties shall include, but not be limited to, selection of assignments of the Production Workers within the Del Monte facility, controlling and monitoring the day-to-day work activities of the Production Workers, performing all personnel functions with respect to the Production Workers. At no time shall Del Monte provide direction to or supervision of the Production Workers; the Del Monte Representative shall only provide direction to Supervisor or Supervisors.

d. **Labor Relations**. The Service Provider will have sole control and responsibility for administering labor relations matters involving its employees. The Service Provider shall, defend, indemnify and hold Del Monte harmless from any expense loss, damage, claim, or liability whatsoever arising out of, or relating to, any unfair labor practice, employment practice or wrongful termination concerning the Service Providers employees except to the extent that any such claims, demands, liabilities, loss, damage, costs or expenses are caused by the fraud, negligence, or willful misconduct of Del Monte or its employees, directors, officers, agents, or representatives. The Service Provider shall have sole control over, and responsibility for, any labor negotiations, grievances, and arbitration concerning Production Workers furnished to Del Monte under this Agreement.

e. **Retention of Production Workers**. The Service Provider shall be solely responsible for the recruitment, hiring, discharge, discipline, transportation, assignment or re-assignment of the Production Workers. The Service Provider shall not, unless otherwise required by law, assign to Del Monte any Production Worker: (i) who Service Provider knows has been convicted of a criminal offense that would have a direct bearing on the Production Worker's suitability for the performance of the Services under this Agreement; or (ii) who Service Provider knows said Production Worker's employment would involve an unreasonable risk to Del Monte's property, or the safety of other Production Workers, Del Monte employees or the general public. Notwithstanding the foregoing, Del Monte shall have the option, in its sole discretion, to reject (or request a re-assignment from the Del Monte facility) of any Production Worker assigned to Del Monte.

f. **Payment of Wages. Time Keeping**. (i) Service Provider shall, at all times, have the sole responsibility of timely paying all wages, benefits, incentives, worker's compensation claims, unemployment claims, payroll taxes and any, and all, other costs and expenses relating to each Worker, as well as complying with all applicable federal, state and local laws, rules and regulations therein (including but not limited to the Migrant and Seasonal Workers Protection Act, and the H-2A Seasonal Worker Program (if applicable)). The Service Provider agrees to timely pay its employees and acknowledges that a failure to make such payment to its employees shall severely impact Del Monte's ability to conduct its business. In the event Service Provider fails to timely pay the Production Workers and/or any applicable government authorities for any reason whatsoever, Del Monte shall have the right to terminate this Agreement immediately, without notice or liability, and be entitled to any other remedies which it may have by law or under this Agreement. Del Monte shall also be entitled to set-off such amounts against outstanding monies due to Service Provider under this Agreement. Such actions by Del Monte shall not constitute a waiver of any of the rights it may have against Service Provider in contract, law or equity, nor shall it relieve or extinguish Service Provider's obligations under this Agreement and/or applicable federal, state or local law. Service Provider shall defend, indemnify and hold Del Monte harmless from any expense, loss, damage, claim, or liability whatsoever arising out of or relating to Service Provider's failure to pay any wages, payroll taxes, benefits, incentives, worker's compensation claims, unemployment claims, or any other costs and expenses relating to each Worker. (ii) Service Provider shall ensure that each Worker properly, accurately and timely records the hours worked hereunder on an authorized and legitimate timecard. Service Provider shall be solely responsible for the reconciliation and settling of any discrepancies with respect to time-keeping matters. Service Provider shall install a functional and accurate time keeping machine solely to be used by the Production Workers. Service Provider shall also be solely responsible for maintaining and keeping current all Worker personnel and payroll records. Del Monte may, at its discretion, grant Service Provider a limited license to use such

space in the Facility as may be reasonably required to operate such time keeping system, however, Del Monte shall not, under any circumstances, be responsible for the maintenance and upkeep of the time keeping system, nor shall it have any control over any Worker time records. Service Provider shall maintain and keep current complete and accurate records detailing, at a minimum, the basis upon which wages are paid, the number of hours worked, total pay period earnings, amounts withheld, net pay earned, written itemized statements with the workers tax identification number, signed and completed Form WH-501 (as applicable), payroll registers, and proof of deposits to the applicable government authorities.

g. **Compliance with Applicable Law.** Each party represents and warrants it shall comply with all the applicable federal, state, county, city, or other local statutes, ordinances, rules and regulations. Service Provider further represents and warrants that it is an equal opportunity employer and refers all qualified employees regardless of race, color, religious creed, ancestry, national origin, sex, sexual orientation, physical disability, mental disability, age, medical condition or marital status. Service Provider agrees to timely respond to, as well as address any and all applicable federal, state, county, city or other local fines, penalties, requests for information, audits, inspections or other related matters pertaining to the Services and Service Provider's obligations under this Agreement. Service Provider agrees to provide Del Monte with periodic status updates regarding any and all matters pertaining to Service Provider's compliance with this Section. Service Provider acknowledges and agrees that it shall provide all industry specific training. Service Provider shall promptly notify Del Monte of the existence of any condition at the Facility that has any potential of creating a safety hazard for its Production Workers. Del Monte will provide a safe work environment for Service Provider employees or its designees including, but not limited to, maintaining its premises and work areas in compliance with all applicable health and safety laws, regulations and ordinances.

h. **Right to Inspect Records/Certification.** Del Monte may, at its expense, upon reasonable prior written notice to Service Provider audit Service Provider to verify compliance with the terms of this Agreement. Del Monte shall endeavor not to unreasonably interfere with the conduct of Service Provider's business. Furthermore, Service Provider shall provide written certification of its compliance with the terms of this Agreement upon request of Del Monte.

i. **Authority.** Service Provider represents and warrants that it has the right to perform the Services without violation or breach of any third party obligations or agreements.

j. Service Provider agrees to provide Del Monte within 180 days after the close of each financial year of Service Provider, a letter from the Service Provider's auditor, certifying that the Service Provider's audit resulted in the Service Provider being deemed a "Going concern." In the event that, at any time during the term of this agreement, Service Provider experiences a material adverse change in its financial condition or general creditworthiness, or fails to meet any of its obligations under this Agreement, Del Monte shall have the right to request from Service Provider and Service Provider shall immediately provide either a security deposit, performance payment bond or letter of credit in an amount, as reasonably determined by Del Monte, to meet Service Provider's payment obligations under this Agreement. Del Monte shall have the right to draw upon the performance payment bond, letter of credit or security deposit in the event the Service Provider fails to meet any of its obligations under this Agreement.

**IV. Compensation.** As compensation for all of the Services provided by the Service Provider, Del Monte agrees to pay the fees set forth in the attached Exhibit A, incorporated herein by reference. The Service Provider shall, on a weekly basis, submit accurate time records to Del Monte for review, along with an invoice for payment of fee. Del Monte shall be obligated to tender payment to the Service Provider upon presentation of an invoice for the total amount due, plus any additional back-up verification requested by Del Monte. In no event shall Del Monte be obligated to pay for any hours not properly reflected on an authorized time card. Payment shall be made within ten (10) business days from the date of receipt of the invoice at Del Monte's corporate offices in Coral Gables, Florida.

**V. Insurance.** The Service Provider shall procure and maintain at its expense during the term of this agreement, policies of insurance in the types and in the amounts no less than the minimum

coverage specified below, with responsible insurance companies, and upon terms satisfactory to Del Monte. Certificates of insurance concerning each such policy shall be delivered to Del Monte upon execution of this agreement. Each such insurance policy shall name Del Monte, its parents, subsidiaries, and affiliates, and each of its respective officers, directors, partners, shareholders, employees, agents and servants as additional insureds (collectively the "Additional Insureds"), and said insurance policy shall be considered to be primary to any similar insurance carried by the Additional Insureds. The required types and amount of insurance are as follows:

a. Comprehensive General Liability insurance with an amount of not less than $2.0 million combined single limit and $3.0 million general aggregate;

b. Umbrella insurance policy with an amount of not less than $5.0 million;

c. Automobile Liability insurance with an amount of not less than $1.0 million combined single limit;

d. Workers' Compensation Insurance in an amount not less than $500,000 per incident or the statutory limits;

e. Employers' Liability Insurance in an amount not less than $1,000,000 per incident.

VI.   **Indemnification.** The Service Provider hereby agrees to indemnify, defend, and hold harmless Del Monte, its parents, subsidiaries and affiliates, and each of their respective officers, directors, shareholders, employees, agents, successors, assigns and representatives of and from any and all claims, demands, liability, loss, damage, costs or expenses (including reasonable attorneys' fees, costs, and expenses) arising out of or in any way connected with the Services provided hereunder, fraud, misconduct or negligence of the Service Provider or its employees, agents or designees and anyone directly or indirectly employed by the Service Provider or anyone for whose fraud, negligence, or misconduct the Service Provider may be liable, except to the extent that any such claims, demands, liabilities, loss, damage, costs or expenses are caused by the fraud, negligence, or willful misconduct of Del Monte or its employees, directors, officers, agents, or representatives.

VII.   **Termination.** The Service Provider acknowledges and agrees that Del Monte requires the highest level of quality in the provision of the Services to preserve the quality and value of its brand name. Accordingly, the Service Provider agrees that Del Monte may at any time, in the exercise of its sole discretion, terminate this agreement upon five (5) days notice to the Service Provider. Upon termination, Del Monte's sole obligation to the Service Provider shall be to pay for any Services that have not been paid through the effective date of termination. Notwithstanding the foregoing, Del Monte shall be permitted to terminate this agreement immediately upon notice to the Service Provider pursuant to Section III (f) above, or any instance of fraud or misconduct by the Service Provider or its employers. Service Provider may terminate this agreement upon sixty (60) days prior written notice to Del Monte.

VIII.   **Right of Setoff.** Del Monte shall have the right of setoff against any and all amounts that may, or may become, due and payable to Service Provider (regardless of the nature of such amounts, including but not limited to unpaid wages, taxes, etc.,) under this Agreement. Del Monte's right of setoff shall include, but not be limited to, (i) any and all amounts owed to Del Monte by Service Provider herein; (ii) unpaid Worker wages, benefits, incentives, worker's compensation claims, unemployment claims, payroll taxes and any and all other costs and expenses relating to any Worker; (iii) damages arising from any breach of representation and warranty by Service Provider herein; or (iv) any claims for indemnification. Del Monte's right hereunder shall not extinguish Service Provider obligations under any applicable law or under this Agreement.

IX. **Waiver of Jury Trial, Venue, and Attorneys' Fees and Costs.** DEL MONTE AND THE SERVICE PROVIDER AGREE THAT, IN ANY SUIT, ACTION, OR PROCEEDING BASED IN TORT, OR IN CONTRACT, BROUGHT BY ANY OF THE PARTIES HERETO IN CONNECTION WITH ANY MATTERS WHATSOEVER ARISING OUT OF, UNDER, OR IN CONNECTION WITH THE TERMS OF THIS AGREEMENT, EACH OF THE PARTIES HERETO SHALL, AND DO HEREBY, WAIVE TRIAL BY JURY TO THE FULLEST EXTENT PERMITTED BY LAW, AND THAT THE PREVAILING PARTY IN ANY SUCH ACTION SHALL RECOVER FROM THE OTHER PARTY ALL REASONABLE ATTORNEYS' FEES, COSTS AND EXPENSES INCURRED WITH RESPECT TO ANY CLAIM, DEFENSE, OR ENFORCEMENT OF ANY OBLIGATION OF EITHER PARTY ARISING OUT OF OR RELATED TO THIS AGREEMENT, INCLUDING, BUT NOT LIMITED TO PRE-TRIAL RELIEF, DISPOSITIVE MOTIONS, TRIAL AND ALL LEVELS OF APPEAL. IN ADDITION, EACH OF THE PARTIES HERETO HEREBY IRREVOCABLY: (A) AGREE THAT VENUE FOR ANY SUIT, ACTION, OR PROCEEDING OF ANY NATURE WHATSOEVER ARISING OUT OF, OR IN ANY WAY CONNECTED WITH, THIS AGREEMENT SHALL LIE EXCLUSIVELY IN THE STATE OR FEDERAL COURTS IN AND FOR MIAMI-DADE COUNTY, FLORIDA, (B) WAIVE, TO THE FULLEST EXTENT PERMITTED BY LAW, ANY OBJECTION WHICH THEY MAY HAVE TO THE LAYING OF VENUE IN THE ABOVE-DESCRIBED COURTS, AND (C) WAIVE ANY CLAIM, DEFENSE, OR OBJECTION THAT ANY SUIT, ACTION, OR PROCEEDING BROUGHT IN ANY OF THE ABOVE-DESCRIBED COURTS HAS BEEN BROUGHT IN AN INCONVENIENT FORUM. FURTHER, EACH OF THE PARTIES HERETO HEREBY ACCEPTS AND IRREVOCABLY CONSENTS TO THE PERSONAL AND SUBJECT MATTER JURISDICTION OF THE STATE AND FEDERAL COURTS IN AND FOR MIAMI-DADE COUNTY, FLORIDA IN ANY SUIT, ACTION, OR PROCEEDING ARISING OUT OF, OR IN ANY WAY CONNECTED WITH THIS AGREEMENT.

X. **Intellectual Property.** The Service Provider shall retain all ownership rights including exclusive copyright ownership in all date reports, information, manuals, computer programs, or other written, recorded, photographic or visual materials, or other deliverables (collectively referred to as the "Intellectual Property") produced by the Service Provider in the performance of the Services. Del Monte shall retain no ownership, interest, or title in such Intellectual Property and, immediately upon termination of this Agreement, Del Monte shall return to the Service Provider any and all Intellectual Property it may have in its possession at such a time. Nothing herein shall be deemed to grant to the Service Provider or any Production Worker or Service Provider employee, any right, title or interest of any kind in any trademark, copyright, design, imagery, trade secret or business information connected in any manner to Del Monte or its employees.

XI. **Third Party Restrictions.** The Service Provider represents and warrants that it and its Production Workers have the right to perform the Services without violation of any third party obligations. The Service Provider further represents and warrants that it and its Production Workers have the right to disclose to Del Monte, all information transmitted to Del Monte in the performance of Services.

XII. **Miscellaneous.**

a. This Agreement, including all Statements of Work, Exhibits and Attachments attached hereto are incorporated by reference, represents the entire agreement between the parties, and supersedes and cancels any other communication, representation or advertising whether oral or written, on the subjects herein. The parties further agree that neither of them will be bound by terms appearing elsewhere (i.e., pre-printed forms or documents, electronic terms and conditions, purchase orders, etc), nor shall such terms be incorporated into this Agreement or be construed to modify, amend, or alter the

terms of this Agreement. Del Monte explicitly rejects the applicability of any general conditions, standard terms or standard agreements of Service Provider. Failure to require strict performance or to exercise any right or remedy contained herein will not preclude any future requirement of strict performance or the exercise of such right or remedy. Any right or remedy contained herein is cumulative to the other rights or remedies available by law. This Agreement shall bind and benefit the parties hereto and their respective legal representatives, successors and permitted assigns. Section headings are for the convenience and are not to be defining or part of the text. All terms used in any one number or gender shall include any other number or gender where applicable.

b. The illegality or invalidity of any part of this Agreement shall not affect the legality or validity of the remainder of the Agreement or Clause, as the case may be.

c. Service Provider agrees that it shall maintain as confidential and not disclose to any third party, except as expressly permitted by this Agreement, the terms and conditions of this Agreement, or any other Del Monte Confidential Information (defined as business and marketing plans and strategies, business know-how, non-public business and technology information, trade secrets, any written materials marked as confidential and any other information, including written, visual or oral information, which reasonably should be understood to be confidential). Service Provider may disclose Confidential Information only to its employees, independent contractors and advisors who need to know such information, and who are bound to keep such information confidential. If Service Provider receives a formal written request to disclose this Agreement, either as part of an agency's investigation, on-going litigation or any other proceeding, Service Provider will provide notice of such request within 24 hours of receipt thereof to provide an opportunity to Del Monte to evaluate said request. Unless otherwise required by law or an applicable and bona fide court order, Service Provider will not disclose this Agreement without approval from Del Monte. Service Provider agrees that money damages would not be a sufficient remedy for any breach of the obligations herein and that Del Monte shall be entitled to seek specific injunctive relief as a remedy for any such breach. Such remedy shall not be deemed to be the exclusive remedy for the breach of obligations herein but shall be in addition to all other available legal or equitable remedies. This provision will survive termination of this Agreement.

d. Service Provider represents and warrants that no officer, director, employee, or agent of Del Monte has been or will be employed, retained or paid a fee, nor has any such person received or been promised any personal compensation or consideration, by or from Service Provider or any of Service Provider's officers, directors, employees or agents in connection with the obtaining, arranging or negotiation of this Agreement or other documents entered into or executed in connection with this Agreement.

e. This Agreement may not be amended except by an instrument in writing signed by each of the parties.

f. Neither party to this agreement may transfer or assign this Agreement without the prior written consent of the other except that Del Monte may assign this agreement to any of its parents, subsidiaries, or affiliates without such consent.

g. Service Provider agrees to comply with the Service Provider Code of Business Conduct set forth in the attached Exhibit C, which is incorporated by reference.

h. Upon written notice to Del Monte, Service Provider may utilize business partners in satisfying its obligations under this Agreement.

i. Nothing contained herein shall be construed to create an agency or joint employer relationship between the Service Provider and Del Monte. Neither party shall have the right or authority to enter into agreements on behalf of the other.

j. This Agreement shall be governed by and construed in accordance with the laws of the State of Florida, without respect to conflict of laws principles.

k. Service Provider shall provide Del Monte with written certification that it has conducted a self-audit and that Service Provider is in compliance with all of its obligations under this Agreement, including but not limited to, compliance with all applicable law.

Confidential

XIII. **Notice.** Any notices required or permitted to be given under this Agreement shall be in writing and shall be delivered personally, by reliable overnight courier service, or by confirmed facsimile transmission, as follows:

Del Monte:
Louie Tenazas
Sr. Vice President-Human Resources
241 Sevilla Avenue, Penthouse
Coral Gables, Florida 33134
305-520-8400
305-520-8159

Service Provider:
Frank Vaccaro
President of Sales
160 Broadway
New York, NY 10038
508.393.4480
508-393-4485

XIV. **Signatures; Counterparts.** This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which shall constitute one and the same instrument. This Agreement may be executed and delivered by facsimile, which facsimile signature shall be deemed an original.

DEL MONTE FRESH PRODUCE N.A., INC.

_____
Louie Tenazas
SVP, Human Resources

Date  4/16/13

SERVICE PROVIDER

_____
Frank Vacarro
President of Sales

Date  4/8/13

## EXHIBIT A
## FEES

Pursuant to Section IV of that certain Contingent Workforce Supply Agreement (the "Agreement") entered into by and between Del Monte and Service Provider, Del Monte shall pay Service provider as follows:

**Location: Atlanta, GA**

1. <u>Indirect Labor positions:</u>

| Indirect Labor Position | MARK UP ON REGULAR HOURS | MARK UP ON OVERTIME HOURS |
|---|---|---|
| Q&A Technicians | 32.5% | 23% |
| Shipping/Receiving | 32.5% | 23% |
| Sanitation | 32.5% | 23% |
| Clerical | 32.5% | 23% |

<u>Indirect Labor Conversion.</u> After an indirect employee has worked for at least 420 hours or 12 weeks (whichever comes first) in any one calendar year, with no break in service of more than five (5) business days, the indirect employee may be hired by Del Monte for no additional fee, provided that Del Monte has paid to Service Provider all undisputed invoiced amounts for such indirect employee.

2. <u>Direct Labor positions (CPU Model):</u>

   a. Direct labor positions provided under the Agreement are described in Table A-1 below. All direct labor positions will be billed pursuant to Table A-2 below.

   Table A-1

   | Direct Labor Position |
   |---|
   | Production Workers |
   | Leads |
   | Packers |
   | Others (as applicable) |

   b. Del Monte shall pay for the services provided by direct labor workers on a cost per unit (CPU) basis based on the average daily CPMH for the week, as described in Table A-2 below:

   Table A-2

   | Output | Tomatoes |
   |---|---|
   | 12 CPMH | $0.7700/ per case |
   | 15 CPMH | $0.7575/ per case |
   | 18 CPMH | $0.6975/ per case |
   | 21 CPMH | $0.5900/ per case |

   CPMH - case per man hour

   - Implementation Fee: waived

   c. <u>Downtime.</u> Billable downtime shall only occur in the event of delays directly caused by Del Monte. All billable downtime must be clearly documented and approved in writing by Del Monte. The parties agree to work together on initiatives to reduce downtime.

   d. <u>Overtime.</u> Required overtime for volume requirements over and above the agreed upon work standard will be billed at a multiplier of 1.5 x standard unit rate but capped at 3% of overall hours. Overtime billed is defined as required hours in excess of a 40-hour working week or over the planned daily shift hours requiring overtime pay by state laws. Overtime units will be calculated as a

percentage of actual overtime hours worked multiplied by the total work (units) produced. Holiday overtime pay shall be capped at 3%.

e. <u>Service Provider requirements</u>.
   i. Service Provider will implement the following activities to ensure compliance with Del Monte operational objectives:
      a. Standardized applicant acceptance procedure.
      b. Trained On-Site Supervisors.
      c. Performance and management monitoring.
      d. Daily and weekly management reporting.
   ii. Service Provider will require the following resources from Del Monte:
      a. Functional training with Service Provider Engineers and Implementation members on Del Monte operating procedures.
      b. Reasonable access to the facility for implementation team to document Standard Operating Procedures.
      c. Reasonable access to Production facility.
      d. Reasonable work space for Service Provider Supervision.
      e. Reasonable work space for a computer and access to a data connection, a fax line, telephone line or copy machine.

## EXHIBIT B

### GMP/TRAINING REQUIREMENTS

Pursuant to Section III (b)(b) of that certain Contingent Workforce Supply Agreement (the "Agreement") entered into by and between Del Monte and Service Provider, Service Provider shall provide the proper safety and security training for each of its Production Workers, including, but not limited to:

1. Inside HACCP: Principles, Practices & Results
2. GMP Basics: Process Control Practices Results
3. Smart Sanitation: Principles & Practices for Effectively Cleaning Your Plant Results
4. GMP Basics: Avoiding Microbial Cross-Contamination Results
5. GMP Basics: Employee Hygiene Practices Video Results
6. Slips, Trips & Falls and various employee safety videos
7. Annual attendance by On-Site Representative or Supervisor to Del Monte Fresh Produce N.A. Train-the-Trainer program.
8. At least one supervisory employee of the Service Provider, in each of the locations in which Service Provider provides Production Workers, shall attend, complete and maintain certification under OSHA's training class entitled "501 Trainer Course in Occupational Safety and Health Standards for General Industry"

Del Monte reserves the right to require Service Provider to provide additional training based upon Del Monte's business requirements.

# EXHIBIT C
# SERVICE PROVIDER CODE OF BUSINESS CONDUCT

In connection with that certain Contingent Workforce Supply Agreement (the "Agreement") entered into by and between Del Monte and Service Provider, Service Provider agrees to comply with the following Service Provider Code of Business Conduct, which is incorporated into the Agreement hereto.

DEL MONTE FRESH PRODUCE
SERVICE PROVIDER CODE OF BUSINESS CONDUCT

This Service Provider Code of Business Conduct sets forth the business conduct standards that Del Monte Fresh Produce expects from all of its Service Providers and the Del Monte employees who interact with them. All Service Providers must maintain the highest standards of ethical conduct, as well as conduct themselves with integrity, honesty and transparency. Service Providers must also operate in strict compliance with all applicable laws, and avoid even the perception of impropriety or a conflict of interest. "Service Provider" means any business, company, corporation, person or other entity that provides, or seeks to provide, any kind of goods or services to Del Monte. By providing any kind of goods or services to Del Monte Service Provider agrees to adhere to this Code of Business Conduct.

**ETHICS AND THE LAW**
Service Provider shall act in accordance with all applicable laws, regulations, rules and requirements applicable to those products and services that it provides Del Monte. Service Provider shall not offer, promise or provide any Del Monte employee a kickback, favor, cash, gratuity, entertainment or anything of value for the purpose of obtaining business or favorable treatment from Del Monte. Del Monte employees are strictly prohibited from soliciting or accepting such favors from Service Providers. This restriction extends to all family members of both Service Provider and Del Monte employees, and any other persons with whom Service Provider has or Del Monte employees have significant personal relationships. Service Provider is strictly prohibited from entering into any type of financial or any other type of relationship with any Del Monte employee that creates any actual, potential or perceived conflict of interest. Service Provider understands that corruption, extortion, embezzlement, bribes, and any other means to obtain an undue or improper advantage are strictly prohibited. Service Provider further understands that it shall not violate any applicable anti-corruption law in those countries where it does business.

**LABOR AND HUMAN RIGHTS**
Service Provider must uphold the human rights of workers, and not use forced or involuntary labor, whether slaved, forced, bonded, prison, military, compulsory or indentured labor, including debt servitude. All work must be voluntary and workers shall be free to leave work or terminate their employment as permitted by and in accordance with applicable law. Child labor is strictly prohibited. Service Provider shall not threaten workers with or subject them to harsh or inhumane treatment or physically abuse. Service Provider will respect the principles of freedom of association and collective bargaining, as permitted by and in accordance with applicable law. Service Provider shall not permit unlawful discrimination or harassment of its employees. Service Provider shall pay all workers at least the minimum wage required by applicable law, provide all legally mandated benefits, and pay for overtime hours at the rate required by applicable law. Service Provider shall pay workers and the applicable government authorities in a timely manner. Service Provider shall clearly convey, in a language understood by its worker, the basis on which such workers are being paid, as well as any legally permissible conditions of employment. Under no circumstances shall work hours or work weeks exceed the maximum permitted under applicable law. Service Provider shall provide workers with a safe, clean and healthy work environment. Service Provider shall comply with all applicable environmental laws.

**REPORTING VIOLATIONS OR ETHICAL CONCERNS**
Service Provider will promptly notify Del Monte regarding any known or suspected violation of this Code of Business Conduct or any other ethical concerns. If Service Provider wishes to remain anonymous it may contact the Del Monte Hotline by phone by dialing 305-520-8499 or toll-free (US only) 1-800-925-4537, fax by dialing 305-520-8496, e-mail to emphotline@freshdelmonte.com, or by mail to "Attn: Employee Hotline, Del Monte Fresh Produce, P.O. Box 149222, Coral Gables, Florida, USA, 33114". Confidentiality for persons who choose not to remain anonymous will be maintained to the fullest extent possible.

Note: Del Monte reserves the right to audit Service Provider's compliance with this Code of Business Conduct, as well as Service Provider's wage, hour, payroll, and other worker records and practices. In the event Service Provider violates or is unable to demonstrate compliance with this Code of Business Conduct, Del Monte reserves the right to immediately terminate or suspend any agreement with Service Provider or seek the appropriate legal action.